## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

      Plaintiff,

vs.                                                                          No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Public Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,
Defendants.

and

TRANSITO TRUJILLO,

      Plaintiff,

vs.                                                                          No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS;
MARK MAYERSTEIN, Senior ROTC
Instructor, and ANTHONY GRIEGO,
Valley High School Principal, in their
official and Individual capacities,
Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Pro Se Motion to Compel Defendant APS to Answer Discovery Requests, filed October 27, 2005 (Doc. 55)("Plaintiff's Motion to Compel"); and (ii) the Plaintiff's Pro Se Opposed Motion to Quash Defendant APS' First Privileged Log, filed November 21, 2005 (Doc. 63)("Plaintiff's Motion to Quash"), both filed in case number 03cv1185.  The primary issues are: (i) whether Defendant Albuquerque Public Schools ("APS") has established that documents relating to, and notes taken during,  investigations by APS' Office of Equal Opportunity Services ("OEOS") employees conducted after receiving complaints of a hostile educational environment in the Valley High School ("VHS") Reserve Officer Training Corps ("ROTC") department and after receiving notice that Plaintiff Transito Trujillo had filed Equal Employment Opportunity Commission ("EEOC") charges were created in anticipation of litigation; and (ii) whether Trujillo has shown that documents relating to APS' OEOS department's investigation of his wife Lourdes Trujillo's EEOC charges are relevant to his claim of retaliation and wrongful termination.  Because the discovery of documents related to alleged complaints against Trujillo and to his EEOC charges is relevant to his lawsuit against APS and Defendant Mark Mayerstein, and APS has failed to satisfy its burden of demonstrating that those documents are conditionally immune from discovery under the work-product doctrine, the Court will grant the motion to compel production of the documents requested.  Because Trujillo has failed to establish the relevance of documents related to Lourdes Trujillo's EEOC claim, however, the Court will deny the motion to compel production of those documents.

## FACTUAL BACKGROUND

Lourdes Trujillo filed an EEOC complaint against APS in June 2001, alleging discrimination because Mayerstein was hired instead of her as Trujillo's supervisor in the ROTC department at VHS. Trujillo supported his wife's claims and reported Mayerstein to VHS principal Anthony Griego in November 2001 when he discovered that Mayerstein was not Federal Aviation Administration certified to teach a zero-hour ROTC class at VHS. That same month, Mayerstein began reporting to VHS administrators that Trujillo was not working his scheduled hours or performing his duties, and was not prepared for class, allegations that Trujillo contends are untrue. After Mayerstein disciplined Trujillo in a counseling session that Mayerstein contends Griego approved, Trujillo filed an EEOC complaint against APS on April 3, 2002. That weekend, the media covered a demonstration that parents of VHS ROTC students staged to complain about Mayerstein.

Griego contacted Barbara Lynn, the APS OEOS Director on April 8, 2002, "regarding concerns of the conduct of Mr. Mayerstein and Mr. Trujillo," and requested an investigation. Plaintiff's Motion to Compel, Exhibit 4 at 1 (Barbara Lynn's June 11, 2002 Memorandum)("Lynn Memorandum"). According to Mayerstein, he met with Griego and Lynn on April 8, 2002, and "discussed the disposition of both Trujillo [EEOC] cases and agreed to help Barbara in any way we could." Pro Se Plaintiff's Reply to APS Response to Motion to Compel Defendant APS to Answer Discovery Requests, Doc. No. 58, filed 1 Nov 2005, filed November 17, 2005 (Doc. 62)("Plaintiff's Reply"), Exhibit 2 (Mayerstein's April 8, 2002 "Memorandum for Record"). Lynn personally conducted the investigation that Griego requested, which included interviewing ROTC students. See Lynn Memorandum at 1-2. As a follow-up to the student interviews, Lynn investigated issues the students raised, apparently also talking to the students' parents, APS administrators, Mayerstein, and

employees of the Air Force ROTC Headquarters and Instructor Management Branch at Maxwell Air Force Base.  See id. at 2-3.  APS characterizes Lynn's report as a "memorandum detailing her opinions with regard to issues surrounding Valley High School's Air Force Junior ROTC program during the 2001-2002 school year," and states that she conducted a "complete investigation into the events."  APS' Response to Plaintiff's Motion and Brief to Compel Defendant APS to Answer Discovery Requests, filed November 1, 2005, at 2 (Doc. 58)("Defendants' Response to Motion to Compel").

As a result of her investigation, in June 2002 Lynn recommended to APS that both Mayerstein and Trujillo be terminated and that they not be rehired as ROTC instructors for the following school year.  See Lynn Memorandum at 4.

At the same time, Linda Rizzo, the senior equal opportunity specialist at APS' OEOS, also conducted an investigation into Trujillo's EEOC charges.  See Plaintiff's Reply, Exhibit 4 (Lynn's May 16, 2002, Letter to Trujillo)("Lynn's May 16 Letter").  Mayerstein stated he had presented a "plethora of documented information" to Rizzo supporting Mayerstein's assertions that Trujillo was truant and did not perform his job duties.  Plaintiff's Motion to Compel, Exhibit 3 (Mayerstein's May 2, 2002 Memorandum to Rizzo addressing 's EEOC allegations).  In addition, Mayerstein encouraged Rizzo to call the individuals Mayerstein listed on an "MFR [memorandum for record] dealing with" the subject of Mayerstein's allegations that Trujillo engaged in sexual relations with a ROTC student's mother at the VHS Armory during the course of an alleged extramarital affair.  Id.

Rizzo interviewed Trujillo about his EEOC charges on May 17, 2002, in the office of an attorney for APS, and made handwritten notes of the interview.  See Lynn's May 16 Letter.  Rizzo gave Trujillo a copy of these notes.  See Plaintiff's Motion to Quash at 2 ("At the conclusion of the

interview Rizzo gave me her handwritten notes."). At some point, Rizzo made eight additional pages of hand-written notes, some of which apparently discussed her investigation into Mayerstein's allegations of Trujillo's sexual misconduct. See Defendants' Response at 2-3 (contending that Rizzo's notes concerning Mayerstein's allegations of sexual misconduct are privileged because they were "created in anticipation of litigation," having been "created after Plaintiff had already filed his charge(s) of discrimination with the EEOC").

## PROCEDURAL BACKGROUND

Trujillo has submitted requests for production of all documents related to Lynn's and Rizzo's investigations, including Rizzo's handwritten notes. Specifically, Trujillo requests: "7. Documents relating to the investigation of Mark Mayerstein's allegations that Trujillo had past sexual affairs with Trish Vreeke;" "9. Documents relating [to] the investigation by APS Barbara Lynn and Linda Rizzo of Trujillo's EEOC charges;" and "11. Documents relating [to] the investigation by APS Barbara Lynn and Linda Rizzo of Lourdes E. Trujillo's EEOC charges." Plaintiff's Motion to Compel, Exhibit 1 at 8-9 (Plaintiff's First Consolidated Request for Discovery, served September 5, 2005, Requests for Production 7, 9, and 11). Attaching a privilege log describing only the two sets of handwritten notes Rizzo authored and asserting a "work product" privilege, APS objected to Request for Production 7 on the basis that Trujillo sought discovery of "personal investigation notes created by APS's Office of Equal Employment Services employees, as such documents were created in anticipation of litigation (i.e., after Plaintiff had already filed charges of discrimination with the EEOC.)" Id. Exhibit 2, Attachment 3 at 1 (APS' Amended Responses to Request for Production of Documents, served October 18, 2005); id. Attachment 4 (APS' First Privileged Document Log, filed October 18, 2005).

In response to Request for Production 9, APS referred to the same privilege log and objected on the same grounds.  See id.  In response to Request for Production 11, APS objected on the grounds that Trujillo was "improperly seeking records created in anticipation of litigation, and thus protected from disclosure by the work product doctrine," but attached no privilege log, and also objected on the grounds that Trujillo was "seeking documents wholly unrelated and irrelevant to T. Trujillo's remaining claim that he was wrongfully discharged."  Plaintiff's Motion to Compel, Exhibit 2, Attachment 1 at 11 (APS' Answers and Responses to Plaintiff's First Consolidated Requests for Discovery, served October 10, 2005).

In Interrogatory number 8, Trujillo asked APS to "identify the final report of investigation resulting from the investigation of the allegations that I created an educational hostile environment at Valley High School."  Plaintiff's Motion to Compel, Exhibit 2, Attachment 2 at 3.  APS responded as follows:

> To the extent Interrogatory No. 8 seeks a report detailing all interviews, statements, and other information reviewed by APS in connection with the ongoing conflict between Trujillo and Mayerstein during the 2001-2002 school year, APS is unaware of any such "final report."  The final resolution following the investigation with regard to Trujillo is set forth in an August 2, 2002 letter to him, attached hereto as: TRANSITO 00379.  This letter recommended that Trujillo be rehired.

Id. at 3-4.

Trujillo e-mailed counsel for APS on October 15 and 16, 2005, attaching a letter detailing the grounds on which he believed APS' discovery responses to be inadequate.  APS responded with a letter further explaining its objections on October 18, 2005.  Trujillo filed his Motion to Compel,

citing rule 37 of the Federal Rules of Civil Procedure,[1] and also filed objections to APS' privilege log

on October 27, 2005.

## LAW REGARDING DISCOVERY

Discovery plays an important role in our adversarial system: full development of the facts

surrounding a matter furthers "the purpose discovery is intended to serve -- advancing the quest for

truth." Taylor v. Illinois 484 U.S. 400, 430 (1988). Under rule 26(b)(1) of the Federal Rules of

Civil Procedure,

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant
> to the claim or defense of any party, including the existence, description, nature,
> custody, condition, and location of any books, documents, or other tangible things
> and the identity and location of persons having knowledge of any discoverable matter.
> For good cause, the court may order discovery of any matter relevant to the subject
> matter involved in the action. Relevant information need not be admissible at the trial
> if the discovery appears reasonably calculated to lead to the discovery of admissible
> evidence.

The rules pertaining to discovery are to be liberally construed to permit discovery. See Harris v.

Nelson, 394 U.S. 286, 297 (1969)(stating that "[t]his rule has been generously construed to provide

a great deal of latitude for discovery"). "Mutual knowledge of all the relevant facts gathered by both

parties is essential to proper litigation. To that end, either party may compel the other to disgorge

---

[1] Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure provides:

A party, upon reasonable notice to other parties and all persons affected thereby, may
apply for an order compelling disclosure or discovery as follows: . . . [if] a party fails
to answer an interrogatory submitted under Rule 33, or if a party, in response to a
request for inspection submitted under Rule 34, fails to respond that inspection will
be permitted as requested or fails to permit inspection as requested, the discovering
party may move for an order compelling answer, or a designation, or an order
compelling inspection in accordance with the request.

whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 508 (1947)

Conversely, any privilege limiting discovery is narrowly and strictly construed. See Mims v. Dallas County, 230 F.R.D. 479, 484 (N.D. Tex. 2005) (stating, "[l]ike all privileges, the work product doctrine must be strictly construed"); Allen v. Chicago Transit Auth., 198 F.R.D. 495, 500 (N.D. Ill. 2001)(stating that "[o]nly by strictly construing the elements of work product, can the doctrine's original intent be best served"); McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 260 (N.D. Ill. 2000)(stating that the work-product doctrine "significantly restricts the scope of discovery and must be narrowly construed in order to aid in the search for the truth"); Stout v. Ill. Farmers Ins. Co., 150 F.R.D. 594, 602 (S.D. Ind. 1993) (collecting cases and stating that "privileges and immunities which hinder the Rules' objective of liberal discovery should be strictly construed consistent with their language and purposes").

A party may request any other party to produce and permit inspection and copying of "any designated documents" in the party's custody or control that "contain matters within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a). Certain things, however, are expressly immune from discovery unless particular showings are made. Rule 26(b)(3) sets forth what is commonly called the "work-product doctrine" and provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under . . . this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The work-product "doctrine is interpreted under both [] rule [26(b)(3)] and Hickman [v. Taylor]."

In re Qwest Comm'ns Int'l Inc., 450 F.3d 1179, 1186 (10th Cir. 2006).   The purpose of the work-

product doctrine is to protect the vitality and efficacy of the adversarial process by precluding an

opposing party from co-opting "the wits" of his adversary, and by providing privacy in which an

attorney may develop litigation strategy and tactics without fear of premature discovery.   See

Hickman v. Taylor, 329 U.S. at 510; id. at 516 (Jackson, J., concurring)("Discovery was hardly

intended to enable a learned profession to perform its functions either without wits or on wits

borrowed from the adversary.").

> At least with respect to work product documents not containing impressions or
> opinions, the Rule has been interpreted to be designed more to protect the proprietary
> interests of parties in their strategies, tactics, and research (which indirectly
> encourages full development of each party's case) than to improve the quality of
> presentations to the court through separate, independent investigations. . . .
>
> * * * *
>
> "The immunity for this class of document is little more than an 'anti-freeloader' rule
> designed to prohibit one adverse party from riding to court on the enterprise of the
> other."

Stout v. Ill. Farmers Ins. Co., 150 F.R.D at 603 (quoting Nat'l Union Fire Ins. Co. v. Murray Sheet

Metal Co., 967 F.2d 980, 984-85 (4th Cir. 1992)).

The Supreme Court of the United States characterizes "[t]he privilege derived from the

work-product doctrine" as a "qualified privilege[]."   United States v. Nobles, 422 U.S. 225, 239

(1975).   "[T]he party seeking to assert the . . . work product doctrine as a bar to discovery has the

burden of establishing that [the doctrine] is applicable," and "[a] party seeking to assert the privilege

must make a clear showing that it applies."   Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540,

542 (10th Cir. 1984) (internal quotation marks omitted).   Thus, a mere allegation that the work-

product privilege applies is insufficient, and "[t]he applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document." Id. See Fed. R. Civ. P. 26(b)(5)(A) (providing that, "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection"). The party claiming the privilege must supply the court with sufficient information to enable the court to determine that each element of the privilege is satisfied. Cf. F.T.C. v. Shaffner, 626 F.2d 32, 37 (7th Cir. 1980) (discussing attorney-client privilege as bar to discovery).

Rule 26(b)(3) contains both a qualified privilege to discovery and a more absolute privilege from discovery. "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." In re Qwest Comm'ns Int'l Inc., 450 F.3d at 1186. The "fact work product" exception is contained in the first sentence of rule 26(b)(3), and protects documents and materials prepared "in anticipation of litigation . . . by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the party seeking discovery can show both a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).

The United States District Court for the Northern District of Illinois has set forth the majority

view regarding how a trial court should determine whether documents are created in anticipation of litigation.

The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially the case in certain contexts, where the discovery opponent routinely performs investigations and accumulates files even when no litigation ensues.

Ordinarily, we have found it helpful to express the elements of the work product doctrine into the concepts of "causation" and "reasonable anticipation" of litigation. There is a "causation" element insofar as production of the material must be caused by the anticipation of litigation. If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine. Fed.R.Civ.P. 26(b)(3) (advisory committee notes). Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes. That is to say, the mere fact that a discovery opponent anticipates litigation does not qualify an "in-house" document as work product.

As for "anticipation of litigation," courts have made clear that, because litigation can be anticipated at the time almost any incident occurs, a "substantial and significant threat of litigation" is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. Demonstration of a substantial and significant threat requires a showing of objective facts establishing an identifiable resolve to litigate. The fact that litigation ensues or that a party retains an attorney, initiates an investigation, or engages in negotiations over a claim, is not dispositive on the issue of whether litigation was anticipated. We consider whether [the party opposing discovery's] descriptions of the documents are sufficient to allow for an evaluation of their assertion of work product immunity. That is, [the opposing party's] descriptions must allow the court to assess whether the documents in question were prepared in anticipation of litigation given the elements discussed above.

Bearing in mind all these factors, it can be summarized that, in order to establish work production protection for a document, a discovery opponent must show that "the primary motivating purpose behind the creation of a document . . . must be to aid in possible future litigation," under circumstance where the discovery opponent can show "objective facts establishing an identifiable resolve to litigate." Only by strictly construing the elements of work product, can the doctrine's original intent be best served. That intent is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal

theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions, thereby insuring that the litigator's opponent is unable to ride on the litigator's wits.

Allen v. Chicago Transit Auth., 198 F.R.D. at 500 (denying claim that defendant company's internal equal employment opportunity investigation reports were created in anticipation of litigation because the defendant failed to make "a showing of objective facts establishing an identifiable resolve to litigate" where "not all internal [EEOC] charges lead to litigation," and compelling their production)(citations omitted). See Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 659-661 (S.D. Ind. 1991)(collecting cases in support of its holding that party opposing discovery must show both that the document was prepared "because of the anticipation of litigation" and that, because litigation may always be anticipated when an incident occurs, the opposing party must show a "more substantial and specific threat before a party's anticipation will be considered a reasonable and justifiable motivating force").

Courts consider several factors in determining whether documents were actually prepared because a party anticipated litigation. These include: (i) whether similar documents are routinely prepared in similar situations in the regular course of business, see Fed. R. Civ. P. 26(b)(3) advisory committee's note ("Materials assembled in the ordinary course of business or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes are not under the qualified immunity provided by this subdivision."); (ii) whether they were prepared before a lawsuit was filed; (iii) whether they were prepared by or at the direction of an attorney who would actually try the case if litigation should develop; (iv) whether the reports are impartial as between the parties, i.e., whether they were designed to be adversarial or investigative in nature; (v) whether the documents fix the opposing party's theory of the case to be used at trial; and (vi) whether the reports are solely the

result of the opposing party's own investigative work or whether they also contain evidence the

requesting party submitted.  See Abel Inv. Co. v. United States, 53 F.R.D. 485, 489-90 (D. Neb.

1971)(holding that IRS investigative reports that were routinely prepared in each questionable tax

case before a lawsuit had been filed, that were not prepared by or at direction of attorney who would

actually try the case if litigation should develop, and that were not solely the result of the

government's own investigative work but also contained information submitted by the taxpayer were

not prepared in anticipation of litigation and therefore were not exempt from discovery by the

taxpayer); Peterson v. United States, 52 F.R.D. 317, 320-21 (S.D. Ill. 1971)  (holding that IRS

appellate-conferee reports and IRS field-agent reports were not prepared in anticipation of litigation

because they were prepared in the regular assessment and review process, and stating that

"[l]itigation cannot be anticipated in every such case when relatively few result in litigation").  Case

law indicates:

> The mere contingency that litigation may result is not determinative.  If in connection
> with an accident or an event, a business entity in the ordinary course of business
> conducts an investigation for its own purposes, the resulting investigative report is
> produceable in civil pre-trial discovery. . . .  A more or less routine investigation of
> a possibly resistible claim is not sufficient to immunize an investigative report
> developed in the ordinary course of business. . . .  While litigation need not be
> imminent, the primary motivating purpose behind the creation of a document or
> investigative report must be to aid in possible litigation.

Janicker v. George Washington Univ., 94 F.R.D. 648, 650 (D.D.C. 1982).

In summary, rule 26(b)(3) contemplates a sequential-step approach to resolving work-product

issues.  First, the movant must show that the subject documents are relevant to his pending litigation.

Once such a showing has been made, the burden shifts to the party resisting discovery to show that

the requested materials were prepared in anticipation of litigation by or for that party.  Such a

showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like.  If the party resisting discovery satisfies its burden and the court concludes that the primary motivating factor in preparing the requested documents was reasonable anticipation of litigation, the burden shifts back to the party seeking discovery to show a substantial need for the materials in the preparation of his case and the inability without undue hardship of obtaining the substantial equivalent of the materials by other means.  See Toledo Edison Co. v. G A Techs., 847 F.2d 335, 339-40 (6th Cir. 1988).

## ANALYSIS

As a preliminary matter, the Court notes that, although APS generally cites the work-product doctrine as the basis for protection from discovery, it has presented no facts indicating that the documents and notes Trujillo seeks to discover contain "opinion work product" or were created by an attorney or at the direction of an attorney.  The Court, therefore, need not address whether "opinion work product" should be treated as absolutely privileged and will analyze the issue solely as one regarding "fact work product" prepared in anticipation of litigation by the party itself.

### 1.    **Interrogatory No. 8.**

Trujillo complains that APS' answer to Interrogatory number 8 -- that no final report of APS' investigation into the problems in the VHS ROTC department exists -- must not be truthful or credible because APS identified many individuals and documents in response to preceding interrogatories and because Barbara Lynn's June 11, 2002 report, which APS produced to Trujillo, clearly related to the investigation issue.  See Plaintiff's Motion to Compel at 2.  In response, APS continues to respond that, although Lynn's memorandum was "one of the pieces of information" APS considered in deciding whether to continue Trujillo's and Mayerstein's employment, there is no

-14-

"final report" on the investigation.  Defendants' Response at 2.  The Court concludes that the Trujillo is merely challenging the factual accuracy of APS' response, and the Court will not resolve factual challenges in a motion to compel.  See Fed. R. Civ. P. 37(a)(2)(B) (providing for order compelling disclosure if "a party fails to answer an interrogatory"); Heaton v. United States Postal Serv., No. 8:06CV2, 2007 WL 295609, at *1 (D. Neb. January 29, 2007)(denying motion to compel because party only challenged factual accuracy of response to interrogatory).  The Defendants are no doubt aware that discovery responses are verified, and that they would be subject to sanctions if they were shown to have been untruthful in their responses.  Because APS has fully answered Interrogatory number 8,  Trujillo's move to compel a different response will be denied.

### 2.    Requests for Production of Documents Related to Trujillo.

Trujillo shows that Lynn set out to determine: (i) whether Trujillo and/or Mayerstein had engaged in creating a hostile educational environment at VHS; (ii) how the ROTC students and parents perceived the problem; (iii) whether Trujillo was performing his job and working the requisite number of hours; (iv) whether Mayerstein had engaged in abusive conduct and inappropriate language towards students; (v) whether Mayerstein was truthfully reporting claims about Trujillo's poor job performance; and (vi) whether either or both ROTC instructors should be terminated.  See Lynn Memorandum at 3.  Lynn's notes and documents may show what information she was given, whether facts reasonably support Mayerstein's allegations, and whether those documents support Lynn's report.  Trujillo contends that, despite that Lynn's report was based on false charges, the Air Force ROTC Headquarters relied, at least in part, on Lynn's recommendation that he be terminated.  Under Rule 26(b)(1), therefore, the documents are relevant and Trujillo should be allowed to discover the documents requested in Request for Production numbers 7 and 9, unless their production is protected

under rule 26(b)(3).  Cf. Hickman v. Taylor, 329 U.S. at 507-08.

APS presents nothing indicating that Lynn's activities were conducted in anticipation of litigation.  According to Lynn's memorandum, she investigated the situation at Griego's behest, and not at the behest of APS' administrators or attorneys, and the purpose of her investigation was to determine whether the ROTC instructors' conduct "was adversely impacting the students."  Lynn Memorandum at 1.  It cannot be fairly said, therefore, that Lynn conducted the investigation, made notes, and gathered related documents and interviews while she was acting "in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  The Court concludes that any notes or other documents Lynn prepared or received are discoverable, even if they also were later used to respond to Trujillo's EEOC complaint, and will compel production of those documents requested in Request for Production numbers 7 and 9.   See Stout  v. Ill. Farmers Ins. Co., 150 F.R.D at 604 (holding that, "[i]f a document . . . would have been created for non-litigation uses regardless of its intended use in litigation preparation, it should not be accorded work product protection"); Harper v. Auto-Owners Ins. Co., 138 F.R.D. at 662 & n.2 ("Documents prepared for concurrent purposes . . . should not be classified as work product.  Such an approach is consistent with the purposes of the work product rule and avoids the impossibility of weighing the asserted motives behind the creation of a document to determine which one is primary.").

Rizzo's objectives, on the other hand, apparently were to investigate Trujillo's EEOC claims that Mayerstein and Griego were retaliating against him by filing false reports about his job performance and hours spent at work, and whether Trujillo had engaged in an extramarital affair with a ROTC student's mother at the VHS ROTC Armory.  See Plaintiff's Motion to Compel, Exhibit 3 (Mayerstein's May 2, 2002 Memorandum to Rizzo addressing Trujillo's EEOC allegations);

Plaintiff's Pro Se Motion and Brief for Summary Judgment Against APS Defendants, filed October 19, 2005 (Doc. 53), Exhibit 7 (EEOC complaint). Rizzo's notes and documents may show what additional information the OEOS employees were given, whether Mayerstein's allegations were reasonably supported in fact, and whether those documents support or are consistent with the June 11, 2002 memorandum Lynn gave to the Air Force ROTC Investigator. Under Rule 26(b)(1), therefore, the documents are relevant, and Trujillo should be allowed to discover documents requested in Request for Production numbers 7 and 9, unless their production is protected under rule 26(b)(3). Cf. Hickman v. Taylor, 329 U.S. at 507-08.

APS has not listed any other specific documents, other than Rizzo's notes, that it asserts the "anticipation of litigation" exception protects. APS also has not submitted any affidavits from Rizzo or Lynn to support its contention that the EEOC investigations conducted, documents received, or notes written, occurred because APS anticipated that Trujillo was going to file suit against it. APS, who bears the burden of proof whether the work-product privilege exists, see Peat, Marwick, Mitchell & Co. v. West, 748 F.2d at 542, instead relies on a single fact for its otherwise unsupported claim that Rizzo's notes were prepared in anticipation of litigation: the notes were written after Trujillo filed his EEOC complaint.

Not only has APS not submitted an affidavit from Rizzo explaining why she prepared the notes, but APS also has not briefed or addressed any factors the court should consider in determining whether Rizzo's notes were, in fact, prepared in anticipation of litigation. The record reveals, however, the following relevant information: Rizzo interviewed Trujillo in May 2002, at the law offices of Beall and Biehler, see Pro Se Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Quash Defendant APS' First Privileged Log and Notice of Completion of Motion to

Quash, filed December 6, 2005 (Doc. 69), Exhibit 4 (Lynn's May 16, 2002 Letter to Trujillo requiring his presence at an interview with Rizzo).  Trujillo initiated this action on September 11, 2002.  See Doc. 1 (02cv1146).  A different law firm presently represents APS in the litigation.  See Answer to the Complaint on Behalf of Board of Education of the Albuquerque Public Schools, Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith and Ronald Williams, filed October 2, 2002 (Doc. 6)(02cv1146).  APS characterizes Rizzo's notes as "personal investigation notes."  Plaintiff's Motion to Compel, Exhibit 2, Attachment 4 at 1 (APS' Amended Responses to discovery).  The record, therefore, indicates that: (i) the notes were prepared before Trujillo filed a lawsuit and as part of an internal investigation; (ii) they were not prepared by or at the direction of an attorney who would actually try the case if litigation should develop; (iii) the notes apparently were prepared as a personal reminder for Rizzo in investigating Trujillo's assertions and preparing responses to the EEOC investigation, as opposed to being adversarial in nature; and (iv) the notes were not solely the result of APS' investigative work but also contained information that Trujillo submitted in his interview.  These factors weigh in favor of concluding that the notes were not created in anticipation of litigation.  See Harper v. Auto-Owners Ins. Co., 138 F.R.D. at 660.  Rizzo was apparently trying to determine whether APS employees were falsely accusing Trujillo.  Because APS has failed to make a sufficient showing to establish that Rizzo's primary motivating factor in preparing the notes was anticipated litigation, the Court will compel discovery of Rizzo's notes.  See Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983)(stating, "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials" with work-product immunity); Allen v. Chicago Transit Auth., 198 F.R.D. at 500-01; Janicker v. George Washington Univ., 94 F.R.D. at 650 (stating "[t]he fact that a defendant anticipates the contingency of litigation resulting from an accident or an

event does not automatically qualify an 'in house' report as work product").  APS must produce all documents relating to the investigation of Mayerstein's allegations that Trujillo had past sexual affairs as requested in Request for Production number 7 and all documents relating to Lynn's and Rizzo's investigations of Trujillo's EEOC charges as requested in Request for Production number 9.

 Even if APS had shown that Rizzo's activities were reasonably conducted in anticipation of litigation, the Court concludes that documents that the APS OEOS office received, which Lynn or Rizzo considered in preparing memorandum and notes, and notes that Lynn and Rizzo made while recording the results of their investigations to determine the source of the conflict between Trujillo and Mayerstein and whether Mayerstein's allegations were true, should be produced.  Trujillo has shown that the documents are particularly relevant to his claim that APS employees created false reports to cause his decertification and ultimate termination, because they may show whether APS employees were aware of the veracity or falsity of Mayerstein's allegations and whether Lynn's termination recommendations, which APS employee Williams admittedly gave to the Air Force ROTC investigator, were based on evidence she received or whether they lacked support.  Trujillo should have the opportunity to compare Rizzo's notes with Lynn's report to see if the OEOS office's investigatory results were consistent.  Further, Trujillo cannot establish that OEOS employees knowingly created false reports that APS employees submitted to the Air Force ROTC without knowing what information the OEOS employees were given and relied on in creating the Lynn report.  Trujillo has therefore shown that he has a substantial need for the documents and notes and that they, or their "substantial equivalent" cannot be obtained any other way.  Fed. R. Civ. P. 26(b)(3).

### 3.    <u>Documents Related to Lourdes Trujillo's EEOC Claim.</u>

Trujillo has failed, however, to establish the relevance of the documents and reports Lynn and Rizzo received and prepared in addressing Lourdes Trujillo's EEOC claim.  He generally states, without explanation, "these reports would have evidence that APS retaliated against me for opposing discrimination of my wife, by creating false and damaging reports to terminate me."  Plaintiff's Reply at 1.  Unless the requested documents regard or mention Trujillo, the Court fails to see how OEOS investigations into Lourdes Trujillo's failure-to-hire claim -- regarding facts occurring in February through April 2001 -- are relevant to Trujillo's retaliation claims for acts that did not begin to occur until November 2001.  Because Trujillo has failed to meet his burden of establishing the relevance of documents and notes related to Lourdes Trujillo's EEOC claim, the Court will not compel production of documents requested in Request for Production 11, unless the documents mention Trujillo.[2]

**IT IS ORDERED** that Pro Se Plaintiff's Motion to Compel Defendant APS to Answer Discovery Requests and Plaintiff's Pro Se Opposed Motion to Quash Defendant APS' First Privileged Log are granted in part and denied in part.  APS shall produce the documents that Trujillo requested in Requests for Production 7 and 9 on or before five business days from the date of the entry of this order.[3]

---

[2] Trujillo asks the Court, in the alternative, for an in camera review.  Because the Court has ordered APS to produce the documents responsive to Requests for Production No. 7 and 9, the request for an in camera review of these documents is moot.  The Court stands ready to review the documents related to Lourdes Trujillo's EEOC claim if APS has any question about whether particular documents should be produced, but will not order an in camera review.  The Court believes that the order is clear.

[3] The Court will also deny Trujillo's request that the Court "quash" the privilege log.  The log need not be verified, and has served its purpose in sufficiently informing Trujillo and the Court what documents APS was withholding so that the Court could make an informed decision about the motion to compel.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*

Transito Trujillo
Albuquerque, New Mexico

     *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

     *Attorneys for Defendants Board of Education,*
     *Albuquerque Public Schools; Joseph Vigil;*
     *Susie Peck; Anthony Griego; Bruce Smith;*
     *and Ronald Williams*

Sean Olivas
Keleher & McLeod
Albuquerque, New Mexico

     *Attorney for Defendant Mark Mayerstein*